HAMILTON W. CONKLIN *vs.* WILLIAM ROBERTS.

The statute (Gen. Statutes, tit. 28, sec. 1,) provides that all contracts of which the consideration is in whole or part money won at a horse-race shall be utterly void. *A* and *B* agreed to race their horses for a purse of $500, each to put half that amount into the hands of the defendant as a stakeholder, and the whole to belong to the winner. Each deposited $250 with the defendant, and he deposited in the bank $125 in bills received by him of *B*, the same being placed to his credit in bank with his other private funds. *B* won the race and demanded the $500 of the defendant. *A* forbade the payment, but the defendant delivered to *B* the money in his hands, $375, and gave him his own check on the bank for $125 payable to bearer. Held that the plaintiff, to whom *B* transferred the defendant's check for a valuable consideration, could not recover upon the check.

ASSUMPSIT on a check of the defendant payable to bearer and held by the plaintiff; brought to the court of common pleas for the county of Hartford, and tried to the jury upon the general issue with notice, before *Briscoe, J.* The jury returned a verdict for the plaintiff, and the defendant moved for a new trial on the ground that the verdict was against the evidence. The case is sufficiently stated in the opinion.

*T. C. Perkins* and *Sill*, in support of the motion.

*Robinson* and *Jones*, contra.

PARK, J.   We think the verdict in this case is manifestly against the evidence, and shows that the jury were governed by wrong principles of law in their deliberations.

The first section of the act to prevent gaming (Gen. Statutes, 484,) provides that all contracts and securities whereof the whole or a part of the consideration shall be money or other valuable thing won, laid or betted at any horse-race &c., shall be utterly void.

It appears from the evidence that one Cummings, and one Cusick, made a contract to trot their respective horses for a purse of five hundred dollars, to be raised by each paying into the hands of a stakeholder one half the amount; and, according to the terms of the agreement, the sum thus raised was to belong to the successful party in the race.

Cummings paid into the hands of the defendant, who was selected as a stakeholder by the parties, the sum of one hundred and fifty dollars in bank bills, and gave the check of a third person for the remaining hundred dollars.  Cusick on his part paid into the defendant's hands the sum of two hundred and fifty dollars in bills.  The defendant deposited in a bank one half of the amount paid him by Cusick.  He had other funds in the bank, and credit was given him at this time in the same way as on other occasions when he made deposits, and the bills were mingled with the funds of the bank.  On the day of the race the defendant held in his hands the check, and the bills paid him by Cummings, and the one hundred and twenty-five dollars in bills paid him by Cusick ; and he drew a check on the bank for the amount deposited.  After the race was over the horse of Cusick was declared the winner, and Cusick demanded the amount of the stakes.  Cummings forbade the payment of the same, but, notwithstanding his objection, the defendant delivered to Cusick the check of Cummings, together with the one drawn by himself, and paid into his hands the two hundred and seventy-five dollars which he held in bills.  During the evening of the same day Cusick transferred to the plaintiff the check of the defendant for a valuable consideration.

These are the principal facts of the case, as detailed in the evidence ; and it must be manifest upon an examination of the statute that the plaintiff cannot recover.

The plaintiff derives his title to the check from Cusick, and if Cusick could not recover upon it, in an action against the defendant, the plaintiff can not, for the law will not suffer itself to be thus easily evaded by the winner of money in such a transaction. Cusick obtained more money of the defendant than he advanced, and if he can recover the balance of the sum deposited by transferring the checks that represent it to third parties, the law is of no avail to prevent gaming.

But this cannot be done. Even the case cited by the plaintiff's counsel, *Edwards* v. *Dick*, 4 Barn. & Ald., 212 so holds. In that case the court gave a construction to the statute of 9th Anne, which is as broad and comprehensive as ours in declaring all gaming contracts void. The action was brought upon a bill of exchange which had been drawn and accepted in discharge of a debt for money won at play. The parties to the action bore the same relation to each other as Cusick bears to the plaintiff. The drawer of the bill was the winner of the money, and the plaintiff in the action was his indorsee for a valuable consideration. The bill was dishonored and the winner of the money was sued upon his indorsement, and although the court held that between the plaintiff and the defendant the defendant could not set up his own gaming to defeat his own indorsement to an innocent party, still, if the action had been brought by the plaintiff against the acceptor of the bill, who was the loser of the money, the plaintiff could not have recovered. Abbott, C. J., says :—"It is however agreed that if the plaintiff in the present case can recover, this bill, the consideration of which was money won at play, will be valid to some purposes. But, I think we must understand the language of the legislature with reference to the object which they then had in view, namely, the prevention of gaming; and that will be effectually accomplished by holding the securities to be void for any purpose of enforcing payment of the money won at play. The drawer, therefore, of such a bill of exchange cannot maintain an action against

the acceptor. Now if he could, by passing the bill to a third person, enable him to sue the acceptor, that would be within the mischief of the act. It follows therefore that no person deriving title through the drawer can be in a different situation from him so as to sue the acceptor. No person, therefore, who derives his title through the winner, can make the loser pay." Best, J., says: "The policy of the statute of Anne was to prevent any security given for the payment of a gaming debt being enforced against the loser; and therefore neither the drawer, nor any person claiming under him, can maintain such an action as the present against the acceptor."

Parsons, in his first volume on Notes and Bills, page 218, says:—" Where notes are made void by express statute, they cannot become good in the hands of subsequent holders; and upon no such note can a subsequent holder have a valid claim against the maker." On the 276th page of the same volume he says:—"And if the paper be illegal on any ground which makes it null and void as between the original parties, it is equally void in the hands of subsequent parties." See also *Bowyer* v. *Brampton,* 2 Strange, 1155.

But the plaintiff says that the money represented by the check here in suit, was Cusick's money; that it was put in the bank by the defendant and kept distinct from the money advanced by Cummings, and was drawn upon as Cusick's money; and that the latter must have a right to recover his own funds, notwithstanding he has already received more money than he advanced. A large portion of the sum he received belonged to Cummings, and it is claimed that the fact of his having received that affords no bar to his recovering what belongs to him.

According to this claim, if Cusick had deposited one hundred dollars in a bank, and afterwards had received one hundred dollars from the bank, he might as well claim that the money he received belonged to some other depositor, and that the bank should now pay him what belonged to him. Where lies the difference? Cummings and Cusick deposited their money with the defendant. No request was made by either that the sum each deposited should be kept distinct

from that deposited by the other, or that the identical bills should be preserved. It was the expectation of both that one or the other would eventually have the entire amount. What the defendant did with the money in order that it might be safely kept is a matter of no importance. Suppose the defendant had kept the money in his purse, and had drawn the check on other funds in the bank belonging to him, would the case have been different in any particular from what it is now? The defendant had other money in the bank, and there is as much reason for saying that the check was drawn upon that, as there is that it was drawn upon the fund of Cusick. The money was deposited, as money is generally deposited in a bank, with no expectation that the identical bills would ever be returned, unless by chance, or that the sum of each would be kept distinct so that it could be traced. The bank was in no sense the debtor of Cusick. Cummings and Cusick agreed to raise a fund of five hundred dollars, and when they paid their money and made up that amount the fund was one entire thing to be won or lost upon the result of the race. The check represented a part of the fund; as much the part furnished by Cummings, as the part furnished by Cusick. There is nothing in this claim and it is unworthy of further consideration.

The plaintiff further claims that this defense cannot be properly received under the defendant's notice. It is too late now to make this claim, even if it was well founded. For aught that appears the evidence was received without objection. The only question before us for our consideration is, whether or not the verdict of the jury is so manifestly against the evidence that a new trial ought to be granted.

We are of opinion that the law, upon the facts presented by the evidence, will not sustain the plaintiff's verdict, and that the verdict is therefore against the evidence in the case, and a new trial is therefore granted.

In this opinion the other judges concurred.