**GNOC, CORP., t/a Golden Nugget Hotel & Casino, Plaintiff–Appellant,**

**v.**

**Cecelia ENDICO, Executrix of the Estate of Leon Endico, Sr., Deceased, Defendant–Appellee.**

**No. 969, Docket 88–7820.**

United States Court of Appeals, Second Circuit.

Argued April 7, 1989.

Decided May 31, 1989.

Stephen N. Dratch, Roseland, N.J. (Greenberg, Margolis, Ziegler, Schwartz, Dratch, Fishman, Franzblau & Falkin, P.A., Roseland, N.J., of counsel), for plaintiff-appellant.

Robert S. Ondrovic, White Plains, N.Y. (David E. Worby, P.C., White Plains, N.Y., of counsel), for defendant-appellee.

Before KAUFMAN, PRATT and MINER, Circuit Judges.

MINER, Circuit Judge:

Plaintiff-appellant GNOC, Corp. t/a Golden Nugget Hotel & Casino ("Golden Nugget"), incorporated and principally doing business in New Jersey, appeals from two judgments entered in the United States District Court for the Southern District of New York (Brieant, Chief Judge) denying enforcement of a gambling debt incurred by Leon Endico, Sr. at the Golden Nugget casino in Atlantic City, New Jersey. Initially, the district court granted defendant's motion for summary judgment and dismissed the complaint, 692 F.Supp. 1515 (S.D.N.Y.1988), holding that a New York court would apply New Jersey law and that the New Jersey statute and regulations governing casino gambling would render Endico's debt unenforceable because the casino had not properly endorsed checks signed and presented to it by Endico to obtain money for gambling. Thereafter, Golden Nugget moved to alter or amend the judgment based on evidence it submitted that New Jersey would consider the debt enforceable because the casino's en-

dorsement comported with the New Jersey requirements. The court denied the motion, reiterating its earlier opinion and adding that New Jersey public policy also mandated denying enforcement of the debt. The court again entered summary judgment dismissing the complaint.[1]

We agree that New York courts would apply New Jersey law. We hold, however, that because Golden Nugget's endorsement of Endico's checks complied with pertinent New Jersey law and regulations, Endico's debt to Golden Nugget is enforceable in New Jersey, and hence, in New York. Moreover, we hold that enforcement is not contrary to New Jersey's public policy. Accordingly, we reverse.

## BACKGROUND

Leon Endico, Sr., a resident of New York, was a regular patron of the Golden Nugget casino in Atlantic City, New Jersey. In 1983, Endico was granted $30,000 in credit from the Golden Nugget. On many occasions after that date, Endico's credit was increased beyond $30,000.

On the weekend of April 19–21, 1985, Endico secured a total of $50,000 for gambling purposes from the Golden Nugget. In exchange, he signed over to the casino ten counter checks, in amounts ranging from $4,000 to $6,000. The counter checks were endorsed "FOR DEPOSIT ONLY GNOC, CORP. ... # 2/008–3879" before Endico signed them. The numbers 2/008–3879 represent a GNOC casino revenue bank account. Endico won $16,400 that weekend, but died the following month, on May 4, 1985, without extinguishing his debt to the casino. On May 8, Golden Nugget deposited the checks in its New Jersey bank, which then presented the checks to Endico's bank for payment. The checks were dishonored for insufficient funds and eventually returned to Golden Nugget.

Golden Nugget, by letter dated June 20, 1985, informed Mrs. Endico of her husband's debt and requested that a representative contact the casino's corporate counsel for resolution of the problem. Not receiving a satisfactory reply, Golden Nugget brought suit against Cecelia Endico, who was the daughter-in-law of Leon Endico, Sr. and executrix of his estate, in the Southern District of New York on October 20, 1987. Diversity jurisdiction was asserted.

The estate moved to dismiss for failure to state a claim, arguing that Golden Nugget had failed to comply strictly with the rules and regulations of New Jersey's Casino Control Commission ("CCC" or "Commission") by not including the name of the depository bank in the restrictive endorsements of Endico's counter checks. Golden Nugget cross-moved for summary judgment, claiming complete compliance with all applicable rules, regulations and procedures. After further submissions, the estate requested that its motion be considered alternatively as one for summary judgment. The district court, by memorandum and order, held that New York courts would apply New Jersey law, and that if faced with the issue, New Jersey courts would require the name of the depository bank as part of the endorsement. The court justified its conclusion by noting that New Jersey requires "punctilious observance" of the state's casino regulations. The court entered summary judgment on June 29, 1988, dismissing the complaint.

Golden Nugget then moved to alter or amend the judgment, *see* Fed.R.Civ.P. 59(e). In support of its motion, Golden Nugget relied mainly on an affidavit of Michael A. Santaniello, a former deputy director of CCC. From 1978 to 1986 Santaniello had served variously as Deputy Director of Licensing, Deputy Director of Operations, and Deputy Director of Special Projections. In his affidavit, Santaniello averred that the Commission has never required the name of the depository bank to be included in restrictive endorsements of

---

1. In denying Golden Nugget's motion to alter or amend the summary judgment, the district court concluded its memorandum and order with the instruction that "th[e] judgment will stand." Thereafter, the clerk of the court entered a second summary judgment dismissing the complaint. Thus, while Golden Nugget appeals both judgments, there is only one valid judgment and a subsequent denial of a motion to alter or amend that judgment.

counter checks. Specifically, Santaniello's affidavit stated that CCC "has interpreted [the regulation in question] in accord with its original intent, as requiring only that counterchecks be endorsed 'for deposit only' to the [casino] licensee's bank account .... [This] merely requir[es] the account number of the licensee's bank account."

In a second memorandum and order, the district court assumed Santaniello's assertions to he true for the purpose of the motion but reiterated its belief that New Jersey courts would interpret the regulation at issue to require the name of the bank. The court explained that New Jersey public policy requires strict compliance with regulatory requirements in the collection of gambling debts in order to establish a discernible "paper trail" of casino credit transactions. This policy is designed to avoid the consequences of oversight or fraud in check negotiation. Golden Nugget's motion to alter or amend the judgment was denied. The court agreed with Golden Nugget that certain minor misstatements of fact in its first memorandum and order should be corrected. On September 6, 1988, summary judgment again was entered dismissing the complaint.

Golden Nugget appeals.

## DISCUSSION

In a diversity action a federal court must apply the substantive law of the state in which it sits, *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78–80, 58 S.Ct. 817, 822–23, 82 L.Ed. 1188 (1938), including that state's choice of law provisions, *see Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). Generally, gambling debts are unenforceable in New York as contrary to public policy. *See* N.Y. Const. art. 1, § 9; N.Y. Gen. Oblig. Law § 5–401 (McKinney 1989); *Albert Simon, Inc. v. Myerson,* 36 N.Y.2d 300, 303, 327 N.E.2d 801, 802, 367 N.Y.S.2d 755, 757, *appeal dismissed,* 423 U.S. 908, 96 S.Ct. 209, 46 L.Ed.2d 137 (1975). However, New York law permits the enforcement of gambling debts validly entered into and enforceable where contracted. *Intercontinental Hotels Corp. v. Golden,* 15 N.Y.2d 9, 13, 203 N.E.2d 210, 212, 254 N.Y.S.2d 527, 529 (1964). Accordingly, the district court properly sought to determine whether Endico's debt to Golden Nugget would be enforced by New Jersey courts.

With the advent of licensed casino gambling in New Jersey, the New Jersey legislature enacted the Casino Control Act (the "Act") to curb potential abuses inherent in gambling culture. *See Greenberg v. Kimmelman,* 99 N.J. 552, 494 A.2d 294, 297 (1985); *In re Adamar,* 222 N.J. Super. 464, 537 A.2d 704, 707 (App.Div.1988); *Playboy–Elsinore Assocs. v. Strauss,* 189 N.J. Super. 185, 459 A.2d 701, 704–05 (Law Div. 1983). The Act reads in part:

> Notwithstanding the provisions of any law to the contrary, checks cashed in conformity with the requirements of this act shall be valid instruments, enforceable at law in the courts of this State. Any check cashed, transferred, conveyed or given in violation of this act shall be invalid and unenforceable
>
> . . . .

N.J.S.A. § 5:12–101(f).

Of the many regulations that have been promulgated to implement this provision of the Act, N.J.A.C. § 19:45–1.25(k)(4) requires a casino licensee to "[p]lace an impression on the back of the original Counter Check a restrictive endorsement 'for deposit only' to the casino licensee's bank account." Apparently, the restrictive endorsement should be placed on the counter check before the patron signs it. *See* N.J. A.C. § 19:45–1.25(k)(5). As Golden Nugget did place its restrictive endorsement (namely, "FOR DEPOSIT ONLY GNOC, CORP. ... # 2/008–3879") on Endico's checks before Endico signed them, the only issue to resolve is, in the words of the district court, "whether or not, as a matter of law, such an endorsement is 'to the casino licensee's bank account' within the meaning of N.J.A. C. § 19:45–1.25[ (k)(4) ]."

New Jersey courts have not confronted this issue directly. New Jersey case law does make clear, however, that strict compliance with that state's casino regulations

is essential. *See Nemtin v. Zarin*, 577 F.Supp. 1135, 1146 (D.N.J.1983) ("[nothing] less than strict compliance will do for claims arising out of gambling activities within New Jersey"); *Resorts Int'l Hotel, Inc. v. Salomone*, 178 N.J. Super. 598, 429 A.2d 1078, 1078–80, 1082 (App.Div.1981) (debt unenforceable when manifested by checks not deposited timely and not dated, as required by N.J.S.A. § 5:12–101). On its face, N.J.A.C. § 19:45–1.25(k)(4) does not specifically require the bank's name. Strict adherence to the regulation's requirement that checks be endorsed "to the casino licensee's bank account" does not require a casino to include the name of the depository bank in a restrictive endorsement of a counter check. Golden Nugget's bank account is sufficiently identified for the purposes of subsection (k)(4) by its account name and number.

Moreover, New Jersey's public policy is not offended by allowing Golden Nugget to collect on Endico's debt. As the district court recognized, New Jersey sought by its casino regulations to establish "traceable, efficient 'paper trail[s]' of credit transactions." *Adamar*, 222 N.J.Super. 464, 537 A.2d at 707. We do not agree, however, with the court's application of that policy to the present facts. The district court, in its second memorandum and order, stated that "the purpose of the restrictive endorsement is to limit the casino's ability, or that of a faithless employee of the casino, to negotiate such checks to third parties." The restrictive endorsement of the type Golden Nugget used fulfills that purpose. Adding the name of the depository bank to an endorsement that already includes the restrictive instruction "for deposit only" and the depositor's name and bank account number does not render the endorsement more restrictive than if the bank's name is omitted. With either type of endorsement the funds to pay the check can be deposited only in the depositor's bank account. Inclusion of the bank's name in the endorsement does not render less likely a mistaken deposit into a non-GNOC account. Nor does it make it any more difficult for a corrupt bank official or "faithless [casino] employee" to perpetrate a fraud.

The district court noted as a further reason for requiring the depository bank's name in a restrictive endorsement that the many inked and printed marks on the backs of checks often are blurred and marred, rendering paper trails difficult to follow. However, if illegible and obscuring marks are a problem, requiring the bank's name in a restrictive endorsement, along with the other information usually found in such endorsements, would only aid marginally in disclosure of a check's lineage.

The district court recognized that many banks, to facilitate commercial deposits by computer, routinely turn personal checks into bearer paper by stamping the checks "Prior Endorsements Guaranteed" or "P.E.G." In the court's view, despite the use of P.E.G., a "more complete restrictive endorsement, while still fallible, would be more effective to serve the statutory purpose." Again, we disagree. Adding the bank's name to an endorsement already restricted by the depositor's name and account number would not affect the negotiability of the check. A P.E.G. stamp would turn any restrictive endorsement into bearer paper, whether or not the depository bank's name is included.

Santaniello's affidavit is not entitled to the great weight that under New Jersey law is accorded to administrative agency interpretations of regulations, *see In re Saddle River*, 71 N.J. 14, 362 A.2d 552, 557–58 (1976), because Santaniello no longer speaks for the CCC. However, given the dearth of meaningful evidence in this case on official interpretation of subsection (k)(4), it was and is proper to consider the Santaniello affidavit as some evidence of the meaning of "to the casino licensee's bank account."

Accordingly, we hold that N.J.A.C. 19:45–1.25(k)(4) does not require the depository bank's name in a restrictive endorsement of counter checks. We believe that no violence is done to New Jersey's public policy with this holding. Thus, under New York law, Endico's debt to Golden Nugget is enforceable.

## CONCLUSION

The judgment of the district court is reversed.