**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2158-17T3

HARRAH'S ATLANTIC CITY
OPERATING CO.,

    Plaintiff-Respondent,

v.

MASSIMO DANGELICO,

    Defendant-Appellant.

_____

Submitted December 5, 2018 – Decided April 26, 2019

Before Judges Koblitz and Ostrer.

On appeal from Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-2566-16.

Mark S. Carter, attorney for appellant.

Craner, Satkin, Scheer, Schwartz & Hanna, PC, attorneys for respondent (Myles Richard Scheer, on the brief).

PER CURIAM

This is a debt collection case. Plaintiff Harrah's Atlantic City Operating Co. ("Harrah's") lent defendant, a casino gambler, $160,000 against a $200,000 line of credit. The loan was secured by counter checks drawn on defendant's bank. The counter checks included defendant's representation that he had funds on deposit with his bank equal to the funds the casino provided. When defendant failed to repay the loan, Harrah's deposited the checks, but the bank dishonored them for insufficient funds. Harrah's then commenced this action, seeking judgment in the amount of the loan, plus interest and attorney's fees. After a period of discovery, the court granted Harrah's summary judgment in the amount of $188,697.31, including interest and $1500 in attorney's fees.

In his appeal, defendant does not contest the essential facts of the loan, his default, and the dishonor of his checks. His sole remaining affirmative defense is that plaintiff should not have extended him credit in the first place because he is a compulsive gambler, he has defaulted on "casino markers" with other casinos, and his "name was placed in a central credit registry not to extend to [him] because of [his] affliction."

We review de novo the trial court's grant of summary judgment, applying the same standard as the trial court. Henry v. N.J. Dep't of Servs., 204 N.J. 320, 330 (2010). We are satisfied that Harrah's demonstrated the absence of a

genuine issue of material fact, and it was entitled to judgment as a matter of law. See N.J. Dep't of Envtl. Prot. v. Alloway Twp., 438 N.J. Super. 501, 507 (App. Div. 2015).

Defendant bears the burden to prove his affirmative defense. Roberts v. Rich Foods, Inc., 139 N.J. 365, 378 (1995). He has failed to demonstrate a violation of the statutory and regulatory framework, see N.J.S.A. 5:12-101, governing extension of credit by casinos, which may constitute a defense. See N.J.S.A. 5:12-101(f) (stating that "[a]ny check cashed, transferred, conveyed or given in violation of this act shall be invalid and unenforceable for the purposes of collection"); Miller v. Zoby, 250 N.J. Super. 568, 575 (App. Div. 1991) (noting that "N.J.S.A. 5:12-101(f) creates a statutory defense in a civil action for a player in a claim by a casino for debts evidenced by checks issued in violation of the statute");[1] Resorts Int'l Hotel, Inc. v. Salomone, 178 N.J. Super. 598, 607 (App. Div. 1981) (affirming the denial of recovery of credit extended to a gambler where the casino failed to comply with statutory requirements regarding counter checks); Playboy-Elsinore Assocs. v. Strauss, 189 N.J. Super.

---

[1] However, while the statute creates a defense to an action by a casino, it does not create a private right of action for damages flowing from a violation of credit regulations. Miller, 250 N.J. Super. at 577 (holding that the statute did not "create private, civil remedies for violations of statutory credit regulations").

185, 187-92 (Law Div. 1983) (describing the statutory and regulatory procedures for credit extension).

Although defendant asserts his name appears on a "central credit registry not to extend credit to [him]," he does not identify the "registry," let alone prove that he is on it and that plaintiff was, as a result, barred from extending him credit. Defendant could have asked the Division of Gaming Enforcement to place him on a list of individuals ineligible for casino credit, N.J.S.A. 5:12-101(j), to whom casinos must deny credit privileges "effective immediately upon receipt of notice," N.J.A.C. 13:69D-1.27A(d). Although defendant contends he defaulted on markers with other casinos, he has not established that any checks remained unpaid when plaintiff extended him credit. See N.J.A.C. 13:69D-1.27(g) (stating that "[a]ny patron having a check returned to any casino unpaid by the patron's bank shall have his credit privileges suspended at all New Jersey casino licensees until such time as the returned check has been paid in full or the reason for the derogatory information has been satisfactorily explained").[2]

_____

[2] Also, defendant could have placed himself on a list of persons self-excluded from gaming activities. See N.J.S.A. 5:12-71.2(a). However, a casino is not liable to any self-excluded person for harm that may result from allowing the excluded person to gamble. N.J.S.A. 5:12-71.2(c).

A-2158-17T3

Nor has defendant presented a common law defense to Harrah's cause of action. Even if he is a compulsive gambler, defendant cites no authority for the proposition that proof of that condition alone demonstrates incapacity to enter into an agreement to borrow funds for gambling. Compulsiveness does not belie understanding the nature and effect of one's actions. See Wolkoff v. Villane, 288 N.J. Super. 282, 287 (App. Div. 1996) (describing incapacity to contract); Lomonaco v. Sands Hotel Casino & Country Club, 259 N.J. Super. 523, 532 (Law Div. 1992) (finding "no support in legislation or case law that the disorder of compulsive gambling should, in and of itself, be recognized as a defense to capacity to contract which will render a contract void"). Also, defendant has not presented a duress defense because he has not demonstrated that the casino exerted wrongful pressure to overcome his free will. See Cont'l Bank of Pa. v. Barclay Riding Acad., 93 N.J. 153, 177 (1983); Rubenstein v. Rubenstein, 20 N.J. 359, 366 (1956).

Defendant has also not established that his claimed compulsiveness obliged Harrah's to deny him credit. First, defendant provides no evidence that the casino was aware he was a compulsive gambler. Being a bad credit risk is not the same as being a compulsive gambler. Furthermore, even had Harrah's known that, defendant points to no authority that a casino has a duty to withhold

A-2158-17T3

credit from a compulsive gambler, particularly one like defendant, who assured the casino that he had ample funds to support his gambling and did not request to suspend his casino credit privileges.

Our Supreme Court has outlined the factors governing whether to recognize a duty of care from one toward another:

> Whether a person owes a duty of reasonable care toward another turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy. That inquiry involves identifying, weighing, and balancing several factors – the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution. The analysis is both very fact-specific and principled; it must lead to solutions that properly and fairly resolve the specific case and generate intelligible and sensible rules to govern future conduct.
>
> [Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993) (citations omitted).]

Applying those factors, we are not prepared to recognize a duty that Harrah's owed defendant to deny him credit. We do not depreciate the financial ruin that may befall compulsive gamblers and their dependents. However, Harrah's is in the business of operating casino gambling; defendant is its customer. The relationship is built on enabling gaming, not withholding it.

A-2158-17T3

Also, in the case of casino patrons who choose not to disqualify themselves from credit privileges or from patronizing casinos entirely, it is unclear how a casino would be able to exercise a duty of care. For example, it is unclear on this record how a casino would distinguish compulsive gamblers from recreational gamblers, and how it would set reasonable limits on compulsive gamblers – particularly ones who, like defendant, represented they had funds on deposit to support their activities.

As for the public interest, we are mindful that our State has approved the operation of casino gambling and provided mechanisms for compulsive gamblers to protect themselves from their compulsion. We are not convinced the public interest supports recognizing a duty to withhold credit from a patron who has not availed himself of the mechanisms the law provides to protect himself from his compulsiveness to gamble.

Other jurisdictions have declined to impose a duty on casinos to restrict the activities of compulsive gamblers. See Merrill v. Trump Indiana, Inc., 320 F.3d 729, 733 (7th Cir. 2003) (concluding that Indiana law would not impose a duty on a casino to prevent a compulsive gambler from causing himself financial harm); Rahmani v. Resorts Int'l Hotel, Inc., 20 F. Supp. 2d 932, 937 (E.D. Va. 1998) (finding that a casino had no duty, under New Jersey law, to prevent a

compulsive gambler from playing); <u>Duff v. Harrah South Shore Corp.</u>, 125 Cal. Rptr. 259, 260-61 (Ct. App. 1975) (finding that a Nevada-based casino had no duty to limit a decedent's check-cashing ability); <u>Stevens v. MTR Gaming Grp., Inc.</u>, 788 S.E.2d 59, 66 (W.Va. 2016) (holding that casinos featuring video lottery terminals have no duty of care "to protect users from compulsively gambling"); <u>cf.</u> <u>Nev. Rev. Stat. Ann.</u> § 463.368(6) (providing that a gambler's "claim of having a mental or behavior disorder involving gambling" is not a defense to a credit instrument or a basis for a counterclaim in an action to collect a debt); <u>Caesars Riverboat Casino, LLC v. Kephart</u>, 934 N.E.2d 1120, 1123 (Ind. 2010) (holding that a comprehensive regulatory scheme governing riverboat gaming abrogated any common law duty that might exist "to refrain from attempting to entice or contact gamblers that it knows or should know are compulsive gamblers").

In sum, defendant has failed to present facts supporting a viable affirmative defense to Harrah's collection action.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

8

A-2158-17T3