189 N.J. Super. 1 (1982)
458 A.2d 511
ROOSEVELT YOUNG, PETITIONER-RESPONDENT,
v.
WESTERN ELECTRIC COMPANY, INC., RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 5, 1982.
Decided October 28, 1982.
Supplemental Opinion on Rehearing March 18, 1983.
*3 Before Judges FRITZ, JOELSON and PETRELLA.
John F. Lynch, Jr. argued the cause for appellant (Carpenter, Bennett & Morrissey, attorneys; Arthur M. Lizza of counsel; John F. Lynch, Jr., and Margaret A. Kerr on the brief).
A. Thomas Amabile argued the cause for respondent (Lomell, Muccifori, Adler, Ravaschiere & Amabile, attorneys).
Laurence Reich argued the cause for appellant on the rehearing (Carpenter, Bennett & Morrissey, attorneys; Arthur M. Lizza and Laurence Reich of counsel; Rosemary A. Hall on the brief).
The opinion of the court was delivered by PETRELLA, J.A.D.
Western Electric Company, Inc. (Western) appeals the denial by the judge of workers' compensation on the ground of lack of jurisdiction of its request for offset against petitioner's award of temporary disability benefits of amounts it paid as temporary disability from a private plan arrangement and a similar offset against the workers' compensation award for permanent disability *4 of pension benefits paid or payable to its now retired employee under its retirement plan.
On June 3, 1981 the judge of compensation found petitioner Roosevelt Young totally and permanently disabled within the contemplation of the odd-lot doctrine.[1] He awarded petitioner 450 weeks of compensation at the rate of $128 a week, beginning June 6, 1976. Western does not dispute that Young is permanently disabled under the odd-lot doctrine. On this appeal it challenges the judge of compensation's decision that he did not have jurisdiction over the question of whether Western was entitled to offset disability payments it made to Young under its private plan against the workers' compensation award, and a like conclusion with respect to a retirement pension offset. We conclude that the judge of compensation erred as to the disability payment offsets, but was correct as to his lack of jurisdiction to order a set off of pension payments under the plan. We reverse and remand on the former and affirm as to the latter with some necessary discussion.
The facts are essentially undisputed. From June 6, 1976 Western paid Young temporary disability benefits of $278.40 a week for six months under its self-insured, private disability plan, and thereafter half-pay of $139.20 a week until March 23, 1977, when it began paying Young retirement benefits of $299.51 a month. Although the weekly payment under Western's disability plan exceeded the applicable workers' compensation rate, the payments under the pension plan on a monthly basis are less than the $128 a week rate payable under the compensation award.

*5 I
We have been furnished with portions of the Western "Text of Plan for Employees' Pensions, Disability Benefits and Death Benefits" (the Plan), effective January 1, 1913, with amendments effective to January 1, 1979. Because counsel has not advised us to the contrary, we assume that the inclusion of § 8, par. 27, in the appendix is a representation that the Plan provisions were the same at the time of petitioner's retirement on March 23, 1977. We turn, then, to a consideration of § 8, par. 27, of the Plan, which reads:
27. Payments under Law

In case any benefit or pension, which the Committee shall determine to be of the same general character as a payment provided by the Plan, shall be payable under any law now in force or hereafter enacted to any employee of the Company, to his beneficiaries or to his annuitant under such law, the excess only, if any, of the amount prescribed in the Plan above the amount of such payment prescribed by law shall be payable under the Plan; provided, however, that no benefit or pension payable under this Plan shall be reduced by reason of any governmental benefit or pension payable on account of military service or on or after June 1, 1969 by reason of any benefit which the recipient would be entitled to receive under the Social Security Act. In those cases where, because of differences in the beneficiaries, or differences in the time or methods of payment, or otherwise, whether there is such excess or not is not ascertainable by mere comparison but adjustments are necessary, the Committee in its discretion is authorized to determine whether or not in fact any such excess exists, and in case of such excess, to make the adjustments necessary to carry out in fair and equitable manner the spirit of the provision for the payment of such excess.
Western argues that its Plan provides for an offset for payments under its disability benefits provisions and its pension provisions. Significantly, however, the Plan provides for reductions of benefits thereunder by amounts required to be paid under any law having comparable purpose to the Plan. The language of the Plan thus broadly provides for integration with payments required by law under state workers' compensation law. Western further argues that the judge of compensation had jurisdiction to hear and decide the offset question, and to order appropriate offsets, even though the very language of § 27 of the Plan contemplates reducing payments under the Plan. However, by virtue of the fact that disability payments *6 have already been made under the Plan, Western now seeks an offset for the disability payments it has made against the workers' compensation award.
The language of N.J.S.A. 34:15-29 states a legislative policy that benefits under the workers' compensation law "shall not be assignable, and shall be exempt from all claims of creditors and from levy, execution or attachment." Notwithstanding this protection from creditors, there is no question that until 1977 New Jersey had permitted offset of payments under pension and disability plans against workers' compensation payments where the plan so provided. Renshaw v. U.S. Pipe & Foundry Co., 30 N.J. 458 (1959). But in 1977 the following provision was added by amendment[2] to N.J.S.A. 34:15-29:
... The right of compensation granted by [N.J. Workers' Compensation Act] may be set off against disability pension benefits or payments but shall not be set off against employees' retirement pension benefits or payments.
The quoted language allows offsets for disability pension benefits or payments. Previously, offsets for workers' compensation benefits against pensions had been a judicially approved practice in New Jersey when the negotiated pension plan so provided. See Renshaw, supra at 468. However, with respect to pension payments the statute now expresses the legislative policy of this State of preventing intrusion on workers' compensation awards. To this extent Renshaw has been legislatively overturned.
Under N.J.S.A. 34:15-29 private temporary disability payments may be offset against workers' compensation benefits. This aspect of the Renshaw opinion has thus been legislatively codified. Such elimination of duplicate benefits is reinforced by N.J.S.A. 43:21-30, which provides for subrogation by the State or a private plan against the workers' compensation award for disability payments.
*7 The question of the proper forum to resolve such offset revolves around the jurisdiction of the judges of compensation over the award and the offset claimed under the implicated statutory provision. The statutory basis for the jurisdiction of the Workers' Compensation Division (Division) is set forth in N.J.S.A. 34:15-49, which provides:
The Division of Workers' Compensation shall have the exclusive original jurisdiction of all claims for workers' compensation benefits under this chapter.
In Conway v. Mr. Softee, Inc., 51 N.J. 254 (1968), the powers of what was then referred to as the Workmen's Compensation Division[3] were stated as follows:
... The Workmen's Compensation Division has only such jurisdiction as is conferred expressly by statute or such as is by fair implication incident to the authority expressly granted. P. Bronstein & Co., Inc. v. Hoffman, 117 N.J.L. 500, 507 (E. & A. 1937). Any reasonable doubt of the existence of a particular power in the Division is to be resolved against such power. Ibid.; Nagy vs. Ford Motor Co., 6 N.J. 341, 349 (1951). [at 258]
Young argues that under the applicable statute the Division only has authority to determine benefits. He relies on language in Williams v. Newark Pub. Welfare Dept., 43 N.J. Super. 473 (Law Div. 1957) to the effect that:
The Division has no jurisdiction to declare an award `paid' because the employee owes the employer a sum, liquidated or unliquidated, upon an independent claim. The Division has only the jurisdiction given it by the Workmen's Compensation Act, [Citations omitted] and that act contains no provision for counterclaims, recoupment or set off. [at 475]
The fallacy in Young's reliance on that case is not only did Williams involve an independent claim by a "creditor" (due to an embezzlement), but it was decided in 1957, which was before the Renshaw decision in 1959, and before the amendment to N.J.S.A. 34:15-29 which expressly allows a setoff for disability pension benefits or payments. There is no dispute here that the temporary payments were disability pension benefits or payments.
*8 A judge of compensation has jurisdiction to consider and decide issues arising under the workers' compensation laws. We are fully satisfied that the judge of compensation must of necessity have the power to resolve the question of offset expressly declared in N.J.S.A. 34:15-29, as part of his responsibility to apply that statute and the panoply of workers' compensation laws, particularly because offset is now statutorily authorized for temporary disability payments. It is also a power which arises by fair implication incident to that authority to determine claims for such workers' compensation benefits. Conway v. Mr. Softee, Inc., supra, 51 N.J. at 258.
Although the Plan provision provides in effect that only the excess amounts, if any, over that paid in workers' compensation would be payable to Young, that does not preclude the statutory offset here. If the issue cannot be determined in the compensation proceedings, there may either be no opportunity to offset disability payments or the result might be to encourage delay by employers in paying disability payments under private plans at a time when they may be most needed. The legislative favor accorded private plan disability payments evidenced by the statutory offset provision and other statutes, to which we make reference below, is unquestionably recognition of the desirability of payments which need not await the agency determination in an adversary proceeding. It is to be observed that this does no disservice to the private plan carrier, for it is entitled to reimbursement by way of subrogation, N.J.S.A. 43:21-30, and an order for this may be incorporated in the workers' compensation judgment. N.J.S.A. 34:15-57.1.
A remand is thus required for determination of offsets due to Western's payment of temporary disability in accordance with the foregoing.

II
A somewhat different question is presented by Western's contention that the workers' compensation award should be *9 reduced by the pension payments. Absent countervailing law, it would appear that, as a matter of state law, there is no allowable setoff against the pension because of the prohibition in N.J.S.A. 34:15-29. The impact of federal preemptive legislation nevertheless mandates a different result for pensions. In support of its position that there should be an offset, Western relies on Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), which held that the Employees Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. § 1001 et seq., preempted New Jersey's workers' compensation law insofar as N.J.S.A. 34:15-29 attempted to preclude employer-employee agreements allowing an offset for workers' compensation awards against the pension plan. Alessi stated:
... Whatever the purpose or purposes of the New Jersey statute, we conclude that it "relate[s] to pension plans" governed by ERISA because it eliminates one method for calculating pension benefits  integration  that is permitted by federal law. ERISA permits integration of pension funds with other public income maintenance moneys for the purpose of calculating benefits, and the IRS interpretation approves integration with the exact funds addressed by the New Jersey workers' compensation law. New Jersey's effort to ban pension benefit offsets based on workers' compensation applies directly to this calculation technique. We need not determine the outer bounds of ERISA's pre-emptive language to find this New Jersey provision an impermissible intrusion on the federal regulatory scheme.
It is of no moment that New Jersey intrudes indirectly, through a workers' compensation law rather than directly, through a statute called "pension regulation." ERISA makes clear that even indirect state action bearing on private pensions may encroach upon the area of exclusive federal concern. For the purposes of the pre-emption provision, ERISA defines the term "State" to include: "a State, any political subdivision thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter." 29 USC § 1144(c)(2) [29 USCS § 1144(c)(2)] (emphasis added). ERISA's authors clearly meant to preclude the States from avoiding through form the substance of the pre-emption provision. [451 U.S. at 525, 101 S.Ct. at 1907, 68 L.Ed.2d at 417-418; footnote omitted]
Thus, in the event of a conflict, ERISA preempts our State workers' compensation statute. Id. at 522-524, 101 S.Ct. at 1905-06, 68 L.Ed.2d at 416-418. See 29 U.S.C.A. § 1144(a). Retirement plans which are covered by ERISA (29 U.S.C.A. § 1003) may be integrated with other funding sources, thereby *10 allowing monies paid by such other sources to be offset against an amount paid by the private plan. We thus conclude that New Jersey's statute prohibiting an offset for pension plans must yield to the federal law. See id. at 514-521, 524, 101 S.Ct. at 1901-05, 1907, 68 L.Ed.2d at 411-415, 417.
Under Alessi's holding, if Western's pension plan is governed by ERISA, and the quoted paragraph 27 was in effect when Young retired, an offset is required. However, any such pension offset would be permissible only against the pension payments and not against the permanent workers' compensation benefits. We find no conflict in that respect between ERISA and the New Jersey workers' compensation law. What is important under Alessi are the rights afforded by the Plan. In the event of a dispute as to such offset, the courts are available to permit a judicial resolution of the matter.
The judge of compensation correctly decided that he did not have jurisdiction to order offsets against the Plan pension payments. He has no jurisdiction to order an offset for other than what is statutorily authorized, i.e., temporary disability payments.
In summary, by virtue of the New Jersey statute and the provisions of the Plan, Young is entitled to payments of the workers' compensation benefits without reduction by offset except for Western's payments for disability. Western may deduct from pension payments under a negotiated plan which is subject to ERISA the amounts paid to its retired employee in workers' compensation benefits.
We reverse and remand to the judge of workers' compensation for determination of the amount of the offset against temporary disability and the entry of an appropriate order giving allowable offset credits in conformity with this opinion. We affirm the judge of compensation's ruling of lack of jurisdiction with respect to any pension plan offset for retirement benefits or payments. No costs. Jurisdiction is not retained.
*11 The supplemental opinion of the court was delivered by PETRELLA, J.A.D.
Subsequent to the filing of this court's opinion, Western made a motion for rehearing, which was granted. Although we iterate our original holding, we find it appropriate to amplify our reasoning due to contentions asserted by Western in its rehearing application.
Western does not now dispute the legal reasoning expounded in our original opinion. Rather, the basis for its application for and argument on rehearing is essentially a factual dispute over categorizing Young as disabled or retired. Western alleges that this court misconstrued the nature of benefits petitioner Young received and is receiving. More specifically, Western asserts that Young is disabled and that he is not retired, and accordingly Western argues that the entire amount of his disability pension should be offset against the compensation award by reducing the compensation award rather than reducing payments under its pension plan.
In its original appellate submission Western failed to include in its appendix the complete "Text of Plan for Employees' Pensions, Disability Benefits and Death Benefits" (Plan), even though that document was apparently before the compensation judge. Cf. R. 2:5-4(a) and R. 2:6-1(a)(7). The Plan was submitted with Western's application for rehearing. It was only upon this court's grant of rehearing and order requiring additional information that Western submitted the report and minutes of its Benefit Committee with regard to the specific actions taken by Western and the Benefit Committee in petitioner Young's case.
Western has incorrectly characterized our original factual understanding, and we reject its contention concerning the nature of Young's benefits. The record as now supplemented clearly indicates that Young was "retired" on disability by Western, and that disability retirement is one of the retirement options.
*12 It can readily be seen that depending on how Young's "retirement" is viewed, he can be considered as receiving either a disability pension or a retirement pension. In a narrow sense, he is receiving a disability pension or benefit, but he is also receiving a retirement pension or benefit because he has been formally retired by Western under its Plan. Had he not been formally retired, a different question may have been presented. When the compensation that is paid may be referred to as either a disability pension or a retirement pension, we must attempt to discern the intent of the statute. We are now faced with resolving the statutory intent of the 1977 amendment to N.J.S.A. 34:15-29 which injected in the same sentence the terms "disability pension" and "retirement pension" without defining either term or providing a guide when a benefit might come within both categories.

I
N.J.S.A. 34:15-29 now refers to two kinds of pensions, i.e., "disability pensions" and "retirement pensions." The 1977 amendment to this particular section of the statute came about as a result of our Supreme Court's decision in Renshaw v. U.S. Pipe & Foundry Co., 30 N.J. 458 (1959). Renshaw involved the interrelationship of provisions of a private pension plan (under which the plaintiff had retired at the age of 65) and a workers' compensation award. See id. at 460-464. The court upheld a pension plan provision authorizing a reduction of the pension payments for amounts the employee had received in a compensation award which was almost contemporaneous with his retirement. The Renshaw court said that "[o]ur Legislature has not expressed any public policy in the matter and there is no reason for the judiciary to interfere with the agreement these parties reached." Id. at 466. However, in subsequent response to Renshaw, our Legislature amended the statute and expressed the public policy that although disability pensions or benefits may be offset against the award in workers' compensation, retirement pensions or benefits may not be so offset. We *13 interpret this, in light of Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), to mean that New Jersey's statutory prohibition against set-off of retirement pensions or benefits must now be construed as prohibiting only a reduction of the compensation award, by retirement pension or benefit payments, but it does not (and may not under Alessi) preclude a reduction of payments made under the retirement plan. Federal preemption, on the other hand, allows a credit for compensation payments by way of reduction of the retirement pension payments. Such a result harmonizes, to the extent now possible, the New Jersey statute as well as the federal preemption announced in Alessi.
The 1977 amendment to N.J.S.A. 34:15-29 constituted a partial repudiation of Renshaw in that the Legislature was expressing the public policy of this State that there could be no reduction of retirement pensions or benefits and that benefits in the nature of retirement payments were not to be set off against workers' compensation benefits. Such a reduction of retirement pension payments or benefits would violate this State's public policy. Cf. Renshaw v. U.S. Pipe & Foundry Co., supra, 30 N.J. at 466. This is consistent with making claims or payments due under workers' compensation awards exempt from claims of creditors and nonassignable. See N.J.S.A. 34:15-29. Cf. Cureton v. Joma Plumbing & Heating Co., 38 N.J. 326, 333 (1962). But see Steller v. Steller, 97 N.J. Super. 493, 499-500 (App.Div. 1967). We thus conclude that where a disability payment takes on the nature or character of a retirement pension or benefit, as here, the statutory language relating to retirement benefits should be paramount.
The New Jersey Legislature has not responded to Alessi in which the United States Supreme Court noted ERISA's purpose of allowing coordination of benefits in negotiated agreements. Therefore, we hold that our statute, as now affected by Alessi, allows a set-off in either direction as to temporary disability benefits provided there is no resultant delay in temporary *14 disability benefits, but allows a reduction of retirement pension or benefit payments only and does not allow a reduction in the compensation award of amounts paid as a retirement pension or benefit. This is not only consistent with what we view as one of the principal objectives of temporary disability compensation  that the employee gets benefits promptly and when he needs it most, as discussed in our original opinion  but gives effect to the extent possible after Alessi, to New Jersey's public policy regarding protection of workers' compensation benefits and the prohibition of their reduction by retirement benefits. Were we to hold otherwise, an employer might be able to in effect reduce the amount of a workers' compensation award by private pension plan provisions. Such a result would be anomalous and certainly not contemplated by New Jersey's workers' compensation legislation.

II
We turn now to Western's Plan. The Plan, in § 4, creates three types of pensions. The two types at issue herein are the "service pension" and "disability pension."[1] A service pension is basically premised on longevity or time with the company: one may be retired upon reaching age 65 with ten years' service; upon reaching age 55 with 20 years of service; at age 50 with 25 years of service, or with 30 years of service without regard to age. Normal retirement age is 65, and mandatory retirement age is 70. Any employee with at least 15 years' service is eligible for a disability pension, if "totally disabled as a result of sickness or of injury, other than by accidental injury arising out of and in the course of employment by the company...." If, at the time of being disabled, the worker is entitled to a service pension, then that is granted rather than a disability pension. A disability pension continues for as long as the employee is disabled. If an employee is *15 receiving a disability pension, and attains normal retirement age, the pension is converted into a service pension, but the amount of pension remains the same.
Although Young has more than 20 years of service with Western, he was only 42 years old at the time of the filing of his compensation petition and was accordingly then ineligible for a service pension, but was then eligible for, and indeed was given a disability pension upon being retired by the Benefit Committee. The thrust of Western's argument now is that because Young is receiving a disability pension rather than a service pension, he is not actually retired despite the action of the Committee in ratifying the recommendation of the "Authorized Benefit Delegate" that "Roosevelt Young be retired on a Disability Pension at the computed rate of $299.51 per month, effective March 23, 1977." His pension, Western asserts, should be offset against his compensation award, and the amount of this offset would in its view be properly determinable by the compensation judge.
The Plan provisions are not particularly helpful, and we are satisfied that they are not at all clear or definitive. The word "retirement" is not defined in the Plan and is used infrequently. Retirement based on years of service and reaching a specified age is not referred to as entitling the employee to a retirement pension but rather to a "service pension." Indeed, it is not at all clear whether Young was retired under § 4(c) as Western contended, or § 6 of the Plan, which it also suggests, and which seems to apply to a nonwork-related accident or an illness.[2] *16 Section 5 of the Plan regarding accident disability benefits for work-related injuries appears applicable, but Western has never taken the position before us that Young was retired under that section.
Section 8, par. 21, of Western's Plan provides that "[i]f a person receiving ... accident disability benefits [presumably under § 5 of the Plan] retires at his own request or is retired at the discretion of the Committee [as occurred here] ... disability benefits shall be discontinued upon the commencement of the service or deferred vested pension payments...." (Emphasis supplied).[3] Young, who had been receiving disability benefits, was "retired" and given a "disability pension."
The pedestrian, common sense meaning of "retirement" is that of a withdrawal from employment other than by a termination for cause; a "pension" is what one receives when retired. Webster's defines "retire" as "to withdraw from action...; to fall back, recede; to withdraw from one's position or occupation, conclude one's working or professional career..." and "retirement" as the "withdrawal from one's position or occupation or from active working life." Webster's New Collegiate Dictionary 989 (1977). A pension is "a fixed sum paid regularly to a person," as in "a gratuity granted (as by a government) as a favor or reward" or "one paid under given conditions to a person *17 following his retirement from service...." Id. at 848. The law dictionary defines "retire" as "[t]o terminate employment and acquire a status of retirement, receiving retirement benefits" and "[t]o sever relations with a business and acquire a status of retirement," and "retirement" as "[a] termination of employment under conditions entitling one to retirement benefits," "[t]he antithesis of a discharge or forced resignation." Ballentine's Law Dictionary 1110-1111 (3 ed. 1969). A "retirement benefit" is "[b]roadly, any benefit received upon retiring from employment, under a formal or informal benefit plan." Id. at 1111. The Employees Retirement Income Security Act of 1974 (ERISA) does not define "retirement" or "pension," but its use of these terms comports with the everyday uses of these words. An "employee welfare benefit plan" or "welfare plan" concerns "medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death...." 29 U.S.C.A. § 1002(1). An "employee pension benefit plan" or "pension plan" is, in turn, one which "(i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond...." 29 U.S.C.A. § 1002(2)(A). The generic term "employee benefit plan" refers to plans that encompass both welfare and pension. 29 U.S.C.A. § 1002(3).[4]
*18 Western's Plan is in accord with these commonly accepted meanings. That the cause of Young's retirement was a physical disability rather than reaching a certain age and completion of a specified term of years of service does not change his status as retired. This reading or meaning is also supported by Western's own usage, as demonstrated by that term's employment in its forms and documents. In the original hearing before the compensation judge, Western's own witness, a benefits consultant, referred to Young as being retired and testified that there was basically no real difference, besides eligibility, between a service and a disability pension, and that both were computed on the same basis. We note moreover that the "Application and Recommendation for Pension" form used in Young's instance[5] uses the term "retirement," and that indeed the Authorized Benefit Delegate recommended that he "be retired on a Disability Pension...." (Emphasis supplied). We are convinced that these usages and common sense support the conclusion that Young is indeed retired on a disability pension notwithstanding appellant Western's counsel's reliance upon a more technical lexicon. It is obvious that termination from service, and hence retirement from service other than for discharge or under circumstances when there is no eligibility for any form of benefits, may be either by way of early retirement, normal retirement or disability retirement. Young is permanently so retired and there is, as far as reasonable probability can take us, no prospect of his reemployment with Western.
*19 The significance of Western's argument is jurisdictional. The Division of Workers' Compensation has only a limited, statutorily defined jurisdiction. It does have a certain ancillary statutory jurisdiction, for example, to determine an offset for temporary disability payments, because such monies compensate in the same way and for the same things as a worker's compensation award. The Division would not, however, have jurisdiction over Western's Plan insofar as it dealt with retirement monies. Cf. N.J.S.A. 34:15-29. Insofar as a workers' compensation judge has "exclusive original jurisdiction of all claims for workers' compensation benefits" (N.J.S.A. 34:15-49) he would be able to determine a disability offset, but a retirement offset is of a different species.
Insofar as we can fathom Western's many and varied contentions on this appeal, the thrust thereof seems to be that not allowing the workers' compensation judge to determine the amount by which workers' compensation benefits should be reduced because of other payments, including pension payments, would be premised upon a factually erroneous characterization of Young's benefits and that such an offset is allowed by law. We have already addressed these points. Western's denomination notwithstanding, Young is indeed retired, albeit on a disability pension, and an offset for retirement monies reducing a compensation award is not justiciable in the Division of Workers' Compensation. Attempting to limit Young's pension to disability payments or benefits to bring it within the disability provision of the statute is in our view not warranted. Our interpretation of N.J.S.A. 34:15-29, in light of the admittedly sparse legislative history, confines the disability set-off allowed therein to temporary payments because of the use of the phrase "retirement benefits or payments" in the succeeding limiting clause. The intent of the Legislature may be found in its attempt to give a certain preference and protection to retirement benefits despite the fact that Alessi subsequently appears in part to frustrate that intent.
*20 We are satisfied that a proper interpretation of the statute requires us to conclude that the words "disability pension or benefit" in the statute were not meant to include a disability retirement when that status results from and is incident to a permanent retirement from employment.

III
Western additionally suggests that not to allow the offset to be determined by the compensation judge would be to frustrate the overall intent and scheme of the Plan, and indeed might possibly deprive Western of its right to an offset. We are not convinced by these assertions. To be initially noted once again are the constraints imposed by statute upon the Division of Workers' Compensation.
It is our view that it is unlikely that the Legislature intended that the judges of workers' compensation be charged with the duty of interpreting complex provisions of employee benefit plans in order to determine potential offsets. Judges of compensation are not Article VI judges under our 1947 State Constitution and do not have the jurisdiction to interpret pension plans and to declare the law in areas outside of the workers' compensation statutes. Insofar as a workers' compensation judge has "exclusive original jurisdiction of all claims for workers' compensation benefits," he would be able to determine a disability offset, but as we noted above, a retirement offset is different and is treated differently by the New Jersey statute.
Our decision obviously does not preclude Western from attempting to recoup from pension payments in the future such amounts that have already been paid without opportunity for offset. In this fashion there is frustration neither of the statutory intent, the provisions of the Plan, nor the coordination of benefits funding sources mandated by Alessi.
Western may, of course, itself determine the amount of any offset owed against Young's retirement for the compensation *21 award, and, at its risk may reduce future payments to the extent pension payments already made were duplicated by the compensation award; our point is that the forum for these determinations, or even legal questions of Plan interpretation, is not before the compensation judge. Whether and to what extent there may be a complete offset[6] as opposed to a partial offset is not determinative. This may well depend upon many factors.
As we observed in our prior opinion, ERISA holds that employee benefit plans may contemplate integration of funding sources between private plans and public monies as from, for example, workers' compensation. The United States Supreme Court in Alessi has held that in the event of a conflict, ERISA preempts state law. In other words, Western's right to an offset is clear; the issue is the forum for determining the offset. We have already held that the compensation judge has jurisdiction to determine the offset as regards temporary disability payments whether they be insured compensation or private plan payments. However, insofar as the disability payments here are tantamount to retirement monies, determination of that offset would be outside of the purview of the Division of Workers' Compensation. This court is bound by ERISA and Alessi, and thus Western's offset right exists. However, this court is also bound by the New Jersey statutes to the extent they can be given effect, and cannot amend such legislation to grant additional jurisdiction over private pension plans to the Division. That is a matter for the Legislature.
Our decision is reaffirmed.
NOTES
[1] For a discussion of the "odd-lot doctrine" see Germain v. Cool-Rite Corp., 70 N.J. 1 (1976), and Barbato v. Alsan Masonry & Concrete, Inc., 64 N.J. 514 (1974). Amendments to the Workers' Compensation Act by L. 1979, c. 283, § 12 (N.J.S.A. 34:15-36), effective January 10, 1980, limited application of the odd-lot doctrine to cases where the triggering work-connected disability is at least 75% of total.
[2] L. 1977, c. 156, effective July 14, 1977.
[3] Its present name is the Division of Workers' Compensation. N.J.S.A. 34:1A-5.1 (effective March 3, 1976).
[1] A third type, a "deferred vested pension," is not relevant to the inquiry herein.
[2] Under § 4(c) of the Plan any employee with at least 15 years' service is eligible for a disability pension, if he or she is "totally disabled as a result of sickness or of injury, other than by accidental injury arising out of and in the course of employment by the company...." Under § 5, par. 1, of the Plan, Accident Disability Benefits attach when an employee is disabled "on account of physical disability to work by reason of accidental injury ... arising out of and in the course of employment by the company." Such benefits, depending on length of service, range from 13 to 52 weeks of full pay and half pay thereafter for as long as the employee remains disabled. By the Plan's own scheme, it would appear that Young should not be receiving a disability pension, because he was injured in the course of his employment, and instead he should still be receiving half pay as a disability benefit. Western's argument that Young is only receiving a disability pension and is not receiving a retirement pension is thus not persuasive, particularly when viewed against the background of the action of Western and the Committee in formally retiring Young.
[3] That Plan section also provides that "[r]etiring an employee from employment without a pension during a period of sickness or accident disability benefits shall not terminate or decrease his disability benefits." Western has consistently taken the position that it retired Young on disability pension, relying on § 4(c). It is bound thereby. Although the quoted sentence is ambiguous, it might well represent an undertaking by Western not to offset fully. There may well be an inconsistency with § 8, par. 27, of the Plan.
[4] Although not controlling in the case before us, we note that past judicial construction of these terms is generally in accord. See, e.g., Int'l. Tel. & Tel. Corp. v. Local 400, 184 F. Supp. 866, 867-869 (D.N.J. 1960), rev'd 290 F.2d 581 (3 Cir.1961) (grievance-arbitration dispute; distinction between retirement and discharge); Jacobs v. N.J. State Highway Auth., 54 N.J. 393, 397 (1969) (distinction between retirement and discharge); Watson v. Brower, 24 N.J. 210, 215 (1957) (will construction case; attempting to determine testator's intent in use of words "retire" and "retired employee"); Wells v. Wilbur B. Driver Co., 121 N.J. Super. 185, 190-191 (Law Div. 1972) (insurance contract construction case; relation between terms "retirement" and "termination of employment"). See also, e.g., Salz v. State House Comm'n., 18 N.J. 106, 111-112 (1955) (nature of public pension); Hozer v. Consol. Police & Firemen's Pension Fund Comm'n, 95 N.J. Super. 196, 199 (App.Div. 1967), certif. den. 50 N.J. 285 (1967) (policeman's pension); Sganga v. Teaneck Police & Firemen's Fund Comm'n, 2 N.J. Super. 575, 579 (Law Div. 1949) (pension rights of municipal employee).

Additionally, Title 43 of our statutes defines these terms regarding the Police and Firemen's Retirement System. "`Retirement' shall mean the termination of the member's active service...." N.J.S.A. 43:16A-1(16). "`Pension' shall mean payments for life derived from contributions by the employer." N.J.S.A. 43:16A-1(12).
[5] He did not sign the application form which indicates thereon that a signature is not necessary for disability retirement.
[6] Counsel indicates that for some unknown reason Western is not current on amounts owed to Young. No computation of offsets to date has been made. Young is not without his remedy.