ROOSEVELT YOUNG, PETITIONER-RESPONDENT, v. WESTERN ELECTRIC COMPANY, INC., RESPONDENT-APPELLANT.

Argued January 23, 1984—Decided May 30, 1984.

*Laurence Reich* argued the cause for appellant (*Carpenter, Bennett & Morrissey,* attorneys; *Laurence Reich* and *Arthur M. Lizza,* of counsel; *Rosemary A. Hall,* on the brief).

*A. Thomas Amabile* argued the cause for respondent (*Lomell, Muccifori, Adler, Ravaschiere & Amabile,* attorneys).

The opinion of the Court was delivered by

SCHREIBER, J.

This case presents the question of whether the Division of Workers' Compensation (Division) has jurisdiction to reduce a workers' compensation award by the amount of disability benefits payable to the employee under the employer's private plan, where the plan provides for such a setoff. If the Division has such jurisdiction, a subordinate issue is the extent to which that jurisdiction depends on the nature of the private benefits.

Petitioner, Roosevelt Young, was employed by the respondent, Western Electric Company, Inc., in various capacities from December, 1956 until June, 1976. In March, 1971 he suffered an injury to his back arising out of and in the course of his employment. That condition led to several hospitalizations and an operation. He also incurred a hearing loss due to noise exposure on the job. He stopped working on June 4, 1976 because of his physical condition.

After the petitioner had stopped working, respondent paid him the following benefits under its Plan for Employees' Pensions, Disability Benefits and Death Benefits (Plan):

June 6, 1976 to December 6, 1976—$278.40 per week (petitioner's full salary as sickness disability benefits)

December 6, 1976 to March 23, 1977—$139.20 per week (one half of petitioner's salary as sickness disability benefits)

March 23, 1977 to December, 1979—$299.50 per month (as disability pension payments)

December, 1979 to present—$344.18 per month (as disability pension payments)

Petitioner filed a workers' compensation claim in November, 1977. Hearings were held on eight widely separated dates

commencing on May 25, 1978 and ending on April 2, 1981. Thereafter a judgment was entered on June 3, 1981 awarding the petitioner 100% total permanent disability because he was totally unemployable under the "odd-lot doctrine." *See generally Germaine v. Cool-Rite Corp.,* 70 *N.J.* 1, 8–9 (1976) (describing the doctrine). The judgment called for payment of $128 per week for 450 weeks commencing June 6, 1976. At the expiration of the 450 weeks, petitioner was to receive benefits so long as he remained totally and permanently disabled in accordance with *N.J.S.A.* 34:15–12(b).

At the compensation hearing, the respondent sought an offset against the award of the payments for both sickness disability benefits and disability pension payments it had made under its Plan, which aggregated approximately $27,000 as of June 3, 1981. As of that date the respondent owed the petitioner in excess of $30,000 representing the amount that had accrued under the compensation award. The judge of compensation refused to make the offset, asserting that his function was to determine the extent of petitioner's disability and that "whether [the petitioner] is ultimately prohibited from receiving said benefits by his disability pension plan provided by his employer is not within my jurisdiction."

Upon respondent's appeal, the Appellate Division modified the workers' compensation judgment. The Appellate Division acknowledged "that until 1977 New Jersey had permitted offset of payments under pension and disability plans against workers' compensation payments where the plan so provided." 189 *N.J.Super.* 1, 6 (1982). The court held that a 1977 amendment to *N.J.S.A.* 34:15–29 [1] modified the prior law by permitting only private temporary disability benefits and not retirement pension benefits to be offset against workers' compensation benefits.

---

[1] The amendment reads as follows:

The right of compensation granted by this chapter may be set off against disability pension benefits or payments but shall not be set off against employees' retirement pension benefits or payments. [*L.*1977, *c.* 156, § 1.]

*Id.* The court also held that the Division of Workers' Compensation had jurisdiction to modify its award accordingly. *Id.* at 8. However, the Appellate Division affirmed the ruling that the Division of Workers' Compensation had no jurisdiction to credit retirement pension benefits, including the Plan's disability pension payments made to the petitioner. *Id.* at 10. The Appellate Division remanded the cause to the Division of Workers' Compensation to determine the amount of the offset and enter an appropriate order.

Respondent moved for a rehearing, contending that its payments to petitioner after March 23, 1977 were "disability pension benefits," rather than "retirement pension benefits," within the meaning of the amendment. The Appellate Division rejected that contention and reaffirmed. *Id.* at 11. It concluded that respondent's payments were actually "retirement" and not "disability pension benefits" as those terms are used in the amendment to *N.J.S.A.* 34:15–29. *Id.* at 18. We granted respondent's petition for certification. 95 *N.J.* 175 (1983).

I

The Division of Workers' Compensation is an administrative agency. *Mulhearn v. Federal Shipbuilding & Dry Dock Co.,* 2 *N.J.* 356, 365–66 (1949). As such, the Division has the right to exercise only those powers that are expressly and duly delegated to it, *Nagy v. Ford Motor Co.,* 6 *N.J.* 341, 349 (1951), or that are impliedly incident to those expressly granted powers, *Conway v. Mr. Softee, Inc.,* 51 *N.J.* 254, 258 (1968) (Division has authority expressly conferred by statute and "by fair implication incident to the authority expressly granted"); *P. Bronstein & Co. v. Hoffman,* 117 *N.J.L.* 500, 507 (E. & A.1937). We must look then to the relevant statutes and the legislative intent to determine that authority.

The Compensation Act, *N.J.S.A.* 34:15–1 to –128 (Act), authorizes judges of compensation to fix the amount that the employer shall pay the employee, *N.J.S.A.* 34:15–49, according

to the statutory schedule, *N.J.S.A.* 34:15–12, for personal injuries caused by accidents "arising out of and in the course of employment," *N.J.S.A.* 34:15–7. Payment under the Act is keyed to weekly salary. *N.J.S.A.* 34:15–12. Insofar as temporary disability compensation is concerned, such compensation payments are in lieu of those wages. However, the amount of the award for permanent disability is not based on loss of earning power, *Everhart v. Newark Cleaning & Dyeing Co.*, 119 *N.J.L.* 108, 111–12 (E. & A.1937), even though the statutory schedule of payments is measured in terms of weekly compensation. Rather, the award represents compensation for the employee's physical impairment. *Perez v. Pantasote, Inc.*, 95 *N.J.* 105, 111 (1984).

■ Obviously, the Act does not prohibit an employer from voluntarily paying compensation without awaiting the Division's formal adjudication. Prompt payment by an employer serves the beneficent purpose of financially aiding the injured worker who, while unable to work, may be out of funds, and thereby furthers the legislative intent of assuring the employee of prompt payment. *See Dudley v. Victor Lynn Lines, Inc.*, 32 *N.J.* 479, 489 (1960). Voluntary payments may also lighten the Division's administrative burden. It is worth noting that the Act also encourages employers to offer compensation at a reasonable time prior to any hearing by providing a mechanism for reducing the amount of attorney fees that may be awarded when the employer has made such an offer. *N.J.S.A.* 34:15–64 authorizes a reasonable attorney fee not exceeding 20% of the judgment, but the attorney fee percentage may be based only on the amount of compensation awarded in excess of that "offered, tendered in good faith or paid."

■■ Where an employer continues to pay wages to an employee after a compensable accident during the period of temporary disability when the employee is not working, a reasonable inference may be drawn that the payments are intended to be in lieu of workers' compensation. 2 *A. Larson,*

*The Law of Workmen's Compensation* § 57.42 (1983); *cf. De Zeng Standard Co. v. Pressey,* 86 *N.J.L.* 469, 471 (Sup.Ct.1914), aff'd o.b., 88 *N.J.L.* 382 (E. & A.1915) (when employee continued to work at full salary, employer not entitled to credit against workers' compensation in absence of understanding, express or implied, that wages should be treated as moneys paid under the Act). In such a situation, there is a clear relationship between the employer's payments and the compensation awarded to the employee. Both cover periods of temporary disability and compensate the worker for the loss of wages resulting from that disability. Crediting the employer's payments under those circumstances is incident to the authority vested in the judge of compensation to award compensation and determine its amount. It follows that the Division has jurisdiction to credit such payments against the workers' compensation award.[2] To hold otherwise would, in effect, be to pay the employee twice for the same reason in the absence of some judicial relief. *Cf. Ifka v. International Smelting & Ref. Co.,* 188 *N.J.Super.* 586 (App.Div.1983) (employer not entitled to reimbursement from employee's surviving spouse or credit against future compensation payments when employer made compensation payments beyond 450 weeks to widow and failed to deduct the widow's wages after the 450 weeks per *N.J.S.A.* 34:15–13(j)); *DiMeglio v. Slonk Constr. Co.,* 121 *N.J.L.* 366, 369–71 (Sup.Ct.1938), aff'd o.b., 122 *N.J.L.* 379 (E. & A.1939) (where employer by mistake made voluntary payments in excess of compensation award, but less than prior weekly wages, held that excess not recoverable from the award).

The Legislature embraced the proposition that offsetting payments for temporary disability against a compensation

---

[2]Compensation claims and payments are exempt from creditors' claims and "from levy, execution or attachment." *N.J.S.A.* 34:15–29. Employers' voluntary compensation payments prior to a formal award do not fall within this statutory proscription. *Cf. De Zeng Standard Co. v. Pressey,* 86 *N.J.L.* 469, 471 (Sup.Ct.1914), aff'd o.b., 88 *N.J.L.* 382 (E. & A.1915).

award is permissible when it enacted the Temporary Disability Benefits Law, *N.J.S.A.* 43:21–25 to –56 (Law), in 1948. Under the Law, provision was made to protect working people against loss of earnings due to non-occupational sickness or accident. *N.J.S.A.* 43:21–26. It provided that, among other things, benefits were not to be paid under the Law for any periods with respect to which benefits "are paid or payable" on account of disability covered under any workers' compensation law. *N.J. S.A.* 43:21–30. If a compensation award were made subsequent to a claimant's receipt of temporary disability benefits from a private plan, the private plan "shall be entitled to be subrogated to such claimant's rights in such award to the extent of the amount of disability payments made hereunder." *Id.; see Janovsky v. American Motorists Ins. Co.*, 11 *N.J.* 1, 4–6 (1952).

Both the subrogation provision of the Law and the Division's practice of crediting against a compensation award for temporary disability an employee's payments in lieu of the award assume the jurisdiction of the Division to make appropriate offsets against compensation awards.

As previously observed, the Act was amended in 1977 to provide that a compensation award might be offset against a "disability pension benefit" but not a "retirement pension benefit." *N.J.S.A.* 34:15–29. This Court prior to the 1977 amendment had expressed a policy supporting integration of compensation awards and pension plans. *Renshaw v. United States Pipe & Foundry Co.*, 30 *N.J.* 458 (1959). In *Renshaw*, plaintiff, a retired employee, sought to invalidate a provision in the defendant employer's private pension plan permitting pension payments to be reduced by benefits received under the Act. *Id.* at 462–63. The plan "was a commitment by the company to see that each retired employee received a fixed amount of money monthly, to compensate partially for wages lost through inability to continue employment by reason of age." *Id.* at 467. This Court found nothing invalid in the plan's provision setting forth that commitment. The Court endorsed the concept that the coordination between wage-loss remedies is desirable "to avoid

duplication of payments for the same real loss." *Id.* at 468. The Court held that a provision in the plan stating that the private benefits were to be credited by the amount of any compensation benefits would be given effect.

It is evident that the 1977 amendment sought to modify the *Renshaw* principle. *See Assembly Labor, Industry and Professions Committee, Statement to A. No. 1309,* 197th Leg., 1st Sess. (1976).[3] There was a dual significance to this amendment. First, it expressed a legislative intent that compensation awards could not be integrated into an employer's retirement pension plan. Second, it implicitly recognized the Division's jurisdiction to make offsets of disability pension benefits against compensation awards for partial permanent and total permanent disability.

■ The legislative intent to disallow reduction of pensions by the amount of compensation awards was frustrated in 1981 when the United States Supreme Court upheld the validity of provisions in two employers' pension plans reducing employees' benefits by an amount equal to their compensation awards. *Alessi v. Raybestos-Manhattan, Inc.,* 451 *U.S.* 504, 101 *S.Ct.* 1895, 68 *L.Ed.*2d 402 (1981). *Alessi* arose from two consolidated appeals concerning *N.J.S.A.* 34:15–29. In both appeals, the plaintiff employees brought class actions after the passage of *N.J.S.A.* 34:15–29 against defendant former employers to prevent the employers from reducing retirement pension benefits by an amount equal to New Jersey workers' compensation awards the employees had received, and to recoup those offsets already made. *Buczynski v. General Motors Corp.,* 616 *F.*2d

---

[3]The sponsors' statement affixed to the original version of the amendment (A.1309) sought to prohibit the practice of deducting compensation payments from monthly pension benefits. The amendment initially read that claims or payments "shall not be set off or deducted from pension benefits or payments." The quoted language was deleted and the following sentence inserted in lieu thereof: "The right of compensation granted by this chapter may be set off against disability pension benefits or payments but shall not be set off against employees' retirement pension benefits or payments."

1238, 1240–41 (3d Cir.1980). Both pension plans had integration provisions to the effect that, "under certain circumstances, benefits will be reduced by the amount of Workmen's Compensation payments received by plan participants." *Id.* at 1240 (footnote omitted).

The United States Supreme Court held that Congress, by passing the Employee Retirement Income Security Act of 1974 (ERISA), had "meant to establish pension plan regulation as exclusively a federal concern." *Alessi, supra,* 451 *U.S.* at 523, 101 *S.Ct.* at 1906, 68 *L.Ed.*2d at 416. ERISA was held to allow integration of pension funds and other "public income maintenance moneys" for the purpose of calculating pension benefits. *Id.* at 524, 101 *S.Ct.* at 1907, 68 *L.Ed.*2d at 417. *N.J.S.A.* 34:15–29, therefore, was preempted by ERISA "insofar as it bears on pensions regulated by ERISA." *Id.* at 524–25, 101 *S.Ct.* at 1907, 68 *L.Ed.*2d at 417–18. It is important to note that the preemption the Supreme Court discussed concerned the subject of pensions; ERISA did not concern itself with the jurisdiction of the Division of Workers' Compensation. *Alessi* held that the 1977 amendment was invalid to the extent that it sought to prevent the reduction of retirement pension benefits by the amount of compensation awards. Since *Alessi,* therefore, a New Jersey employer is permitted to reduce either its disability pension benefits or its retirement pension benefits by the amount of workers' compensation paid to the same employee. Any restrictions on that power in the 1977 amendment have been rendered void.

The 1977 amendment, however, also had an implicit second purpose—to recognize the Division's jurisdiction to reduce compensation awards by amounts paid in "disability pension benefits," as distinguished from "retirement pension benefits." *Alessi* did not affect the amendment's provision recognizing the Division's jurisdiction to effect such setoffs. The amendment may be read literally to provide only that disability pension benefits, but not the compensation award, may be reduced. Such a reading is counterproductive to the workers' compensation scheme; it would encourage employers to delay payment of

disability pension benefits until the compensation awards had been determined. It is doubtful that the Legislature had any such intent. Rather, an underlying theme of the workers' compensation law is that there should not be duplicative payments for the same disability. For example, the Act contemplates an election between common law remedies and that provided by workers' compensation for the same injuries. *N.J. S.A.* 34:15–8. It would be anomalous to permit the setoff in only one direction and there appears to be no justification for that proposition. The sense of the Act is that compensation awards as well as disability pensions may be reduced depending on the timing and amounts of the respective payments. Our interpretation accords with the settled statutory interpretative guide that the letter should give "way to the obvious reason and spirit of the expression." *See San-Lan Builders, Inc. v. Baxendale,* 28 *N.J.* 148, 155 (1958).

II

Given that the Division has jurisdiction to offset some private benefits against compensation awards, the remaining question is which types of private benefits may properly be offset against those awards. We have seen that prior to the 1977 amendment the Division had jurisdiction to set off against compensation awards temporary disability benefits paid under the Law or wages paid by employers during the temporary disability period. The generic phrase "disability pension benefits" in the 1977 amendment would include not only these payments, but other benefits paid because of disabilities covered by the Act. The Appellate Division construed the 1977 amendment to permit the Division of Workers' Compensation to set off only temporary disability benefits paid under a private plan. Such a restrictive interpretation of the amendment is not warranted in view of the long-time prior practice of the Division's crediting employers for payments made during periods of an employee's temporary disability and of the provisions under the Law. Nothing in the amendment's history indicates that it

was enacted simply to codify preexisting law. Indeed if that had been the legislative intent it is difficult to understand why reference was not made to temporary disability—the period after the accident when the employee was unable to work. Instead, the Legislature stated that the "right of compensation," which includes temporary as well as permanent compensation, may be set off against disability pension benefits or payments. The language and spirit of the amendment support the view that disability pension benefits may be set off against both temporary and permanent disability compensation awards.

Whether disability benefits would be included within the amendment would depend in the first instance on the plan. If the benefits under the plan represent payments for a compensable disability and the plan integrates the two, then an offset against a compensation award would be in order. Determination of those issues should properly be made in the Division. Thus the Division would decide if the payments under the plan were "disability pension benefits or payments" and were to be integrated, and, if so, offset those payments against a compensation award.

On the other hand, if the Division determined that the plan's benefits were "retirement pension benefits or payments," then the Division would have no jurisdiction to offset them against the compensation award. The source of jurisdiction in the 1977 amendment did not include retirement pension benefits. As previously observed, *Alessi* did not invalidate the amendment insofar as it concerned the Division's jurisdiction. Despite the Division's lack of jurisdiction, the employer is not without remedies. It could seek enforcement of the plan's provision for setoff in the courts. *See, e.g., Glover v. South Central Bell Tel. Co.*, 492 *F.Supp.* 1032 (E.D.La.1980), aff'd, 644 *F.*2d 1155 (5th Cir.1981); *Nelson v. Victory Elec. Works, Inc.*, 227 *F.Supp.* 404 (D.Md.), aff'd *per curiam*, 338 *F.*2d 994 (4th Cir.1964); *Board of Educ. v. Chicago Teachers Union*, 86 *Ill.*2d 469, 56 *Ill.Dec.* 653, 427 *N.E.*2d 1199 (1981); *Heck v.*

*George A. Hormel Co.,* 260 *N.W.*2d 421 (Iowa 1977). Its relief could include a stay of the payment of that amount of the compensation award. If there were an issue with respect to whether a setoff was proper, the court could mold temporary equitable relief depending on the circumstances, such as staying payment of the compensation award while continuing to pay the pension. In this manner duplicative payments would be avoided and the employee would receive a sum at least equal to the amount due under the plan until the issue was resolved.

### III

The respondent's Plan for Employees' Pensions, Disability Benefits and Death Benefits is a noncontributory plan. It provides in relevant part for three types of benefits: service pensions, disability pensions, and sickness disability benefits. A service pension is based on age and service, normal retirement age being 65 with a minimum of 10 years' service. The earliest eligibility for this type of pension would be after 30 years of service irrespective of age or 25 years of service attained by age 50.

The second type is a disability pension available for employees "totally disabled as a result of sickness or of injury, other than by accidental injury arising out of and in the course of employment," provided the employee has 15 or more years of service. A disability pension continues so long as the employee is unable to resume "active service." If the employee attains age 65 while receiving the disability pension, it is converted into a service pension.

A third category is sickness disability benefits. This covers employees physically disabled from working due to illness that does not arise "out of and in the course of employment." Payments are to be made for a period not exceeding 52 weeks.

According to the Plan a sickness or injury arises "out of and in the course of employment" and the employee is not eligible for benefits under the sickness disability or disability pension

sections when: (1) the injury or illness has resulted "solely" from an "accident during and in direct connection with the performance of duties to which the employee is assigned in the service of the Company, or which he is directed to perform by proper authority, or in voluntarily protecting the Company's property or interests"; (2) "there must be a clear and well-established history of the cause and circumstances of [disability] accidentally inflicted"; (3) the cause and circumstances "must be sufficient to produce the alleged" disability; and (4) "there must be satisfactory evidence that such [disability] renders the employee unable to perform his duty in the service of the Company." An employee who first receives "sickness disability benefits" and who, as a result of that sickness or injury, then becomes totally disabled 'and leaves the service of the company is entitled to a "disability pension."

Several provisions in the Plan demonstrate that benefits are to be integrated with funds received from other sources for similar reasons. John Weber, respondent's employee benefit consultant, who coordinated the application of the Plan to individual employees, explained that workers' compensation awards are offset against disability pensions. He referred specifically to a section of the Plan authorizing the administrators of the Plan to determine that if the benefit or pension payable under any law is "of the same general character as a payment provided by the Plan," the employee was to be paid the excess only, if any, of the amount provided in the Plan above that dictated by the law. The Plan also reflected a policy of integration in that an employee could elect to receive the benefits under the Plan instead of prosecuting claims he might have at law against the respondent.

The petitioner was 41 years of age at the time he stopped working. He had worked for about 20 years and was not eligible for a service pension. His total disability was not due "solely" to his back injury, which had occurred approximately five years before, but rather to a combination of factors. He

was eligible for sickness disability benefits. When the sickness disability benefits ran out, he became eligible for a disability pension.

The judge of compensation found that the petitioner was unemployable on a regular basis in a reasonably stable job market because of personal handicaps over and above limitations on work capacity caused by the actual injury. He was therefore eligible for workers' compensation under the "odd-lot" doctrine, see *Barbato v. Alsan Masonry & Concrete, Inc.,* 64 *N.J.* 514 (1974), although his disability had not resulted "solely" from injuries "arising out of and in the course of employment" as defined in the employer's Plan.

The respondent continued to pay petitioner his full salary for a six-month period following his work stoppage. During the next 3½ months, respondent paid him at the weekly rate of 50% of his salary. These payments were made under the sickness disability benefits provisions of the Plan. The petitioner was placed at the end of the 3½ month period under the disability pension category, since it was determined that he was totally disabled and because of that disability was no longer in the respondent's employ. During the entire period the petitioner was being paid benefits for disabilities compensable under the Act. That being so, the respondent was entitled to an offset for such payments. As previously noted, petitioner had already received approximately $27,000 in benefits and payments from the Plan. To not allow an offset would be to pay the petitioner twice for the same disability.

The matter is remanded to the judge of workers' compensation to determine the amount of offset and for the entry of an order in conformity with this opinion. The judgment of the Appellate Division is affirmed as modified.

*For affirmance as modified*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*Opposed*—None.