James C. MORGART and Financial Ecology, Inc., Plaintiffs,

v.

UNION MUTUAL LIFE INSURANCE COMPANY, Unionmutual Stock Life Insurance Company of America, and Unionmutual Stock Life Insurance Company of New York, Defendants.

Civ. A. No. 85–5104.

United States District Court, D. New Jersey.

Sept. 30, 1986.

Hanlon, McHeffey, Herzfeld & Rubin by Robert M. Hanlon, Edison, N.J., and James R. Hubbard, Miami, Fla., and Proenza, White & Huck by David J. White, Miami, Fla., for plaintiffs.

Crummy, Del Deo, Dolan, Griffinger & Vecchione by Arnold B. Calmann, Newark, N.J., Shutts & Bowen by Wm. J. Gallwey, III, Miami, Fla., for defendants.

## OPINION

STERN, District Judge.

Plaintiff, James C. Morgart, was general agent in the State of New Jersey for Union Mutual Life Insurance Company from 1971 until 1983. The agency agreement between Morgart and Union Mutual contains a provision giving each party the right to terminate on thirty days notice. Morgart alleges that this provision was modified by several written representations, confirmed orally, that the company would not terminate as long as Morgart met his minimum sales quotas. On November 1, 1983, however, Union Mutual announced that all such general agency contracts would be terminated as of December 31, 1983. Morgart alleges in this suit that the termination was in breach of his contract with Union Mutual, and adds claims for breach of a promise enforceable by application of promissory estoppel, fraud and misrepresentation, breach of a franchise agreement, breach of the duty of good faith and fair dealing, negligence, and unjust enrichment.

Jurisdiction in this matter is based on diversity of citizenship. Morgart is a citizen of New Jersey. He is the sole shareholder and president of Financial Ecology, Inc., which for a time served as a vehicle for his relations with Union Mutual. Financial Ecology is a New Jersey corporation with its principal place of business in New Jersey. Union Mutual is a Maine corporation with its principal place of business in Maine.

Union Mutual has moved to dismiss and also for summary judgment. I previously ruled on the motion to dismiss; I now find that I must deny the motion for summary judgment.

## The Choice of Law Issue

Before I turn my attention to the summary judgment motion, however, there is a preliminary matter I must address. On June 16, 1986, I heard oral argument on a motion to apply the substantive law of New Jersey to this lawsuit. The motion was made in response to a March 21, 1986 order of Magistrate Ronald J. Hedges that unless such a motion was made, the substantive law of Maine would apply.

At argument I observed that neither party had pointed to a difference in the laws of Maine and New Jersey as they applied to this case. Applying the choice-of-law principles of the forum state, *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), I denied the motion as premature, without prejudice to renew should a true conflict emerge. *Rohm and Haas Co. v. Adco Chemical Co.,* 689 F.2d 424, 420 (3d Cir.1982) (in cases of false conflict, "New Jersey conflicts of law rules permit the resolution of the case without a choice between the laws of the two states."); *State Farm Insurance Company v. Simmon's Estate,* 84 N.J. 28, 41 n. 1, 417 A.2d 488 (1980) (if the same result would obtain by application of law of different states, "there would be no actual conflict of law between the two states, obviating the necessity to choose between them.")

On August 13, 1986, Magistrate Hedges entered an order that "until the parties concretely establish a different outcome resulting from the application of a particular forum's choice of law, the law of Maine shall continue to govern the action, as per my Order of March 27, 1986."

The Magistrate's order of August 13 was not made in connection with a "matter pending before the court," nor did I designate Magistrate Hedges to make any determination in regard to the choice of law

issue. Under the Magistrate's Act, 28 U.S.C. § 636(b)(1)(A), therefore, Magistrate Hedges had no jurisdiction to enter his order of August 13, *In re Morrissey*, 717 F.2d 100, 102 (3d Cir.1983).

In order to clarify the record on this matter, I will vacate Magistrate Hedges' order of August 13, 1986, as having been entered without jurisdiction. I reiterate my decision of June 16: unless and until a true conflict arises, I will decide this matter in accordance with legal principles accepted by both Maine and New Jersey.

*The Motion for Summary Judgment*

Union Mutual moves for summary judgment on two grounds. First, it argues, Morgart was not terminated, but accepted early retirement voluntarily. Second, it points to an agreement entered into between Morgart and Union Mutual on January 3, 1984, and asserts that any surviving rights under Morgart's general agency agreement were merged into that agreement and have been extinguished.

· I. *Voluntary Retirement*

Morgart learned on November 1, 1983 that his general agency contract was to be terminated on December 31, 1983. Before the termination date, Morgart requested and was approved for "early retirement," which was one of several options offered to the terminated agents, and which, Morgart claims, would have been available to him whether or not his agency had been terminated. The other options included continuing agency relationships with the company under new terms.

As a result of his early retirement, Morgart was eligible for and on December 15, 1983 entered into a "Floored Commission Lending Agreement," or "Floored Oates" Agreement, with Union Mutual. The Floored Oates Agreement sets up an annuity account funded by the commission payments due to Morgart on insurance he had sold. It guarantees him a certain level of monthly payments for fifteen years, with lower payments after that.

Retirement, says Union Mutual, is the "antithesis" of wrongful termination,

*Young v. Western Electric Co.*, 189 N.J. Super. 1, 17, 458 A.2d 511 (App.Div.1982), *Mod.* 96 N.J. 220, 475 A.2d 544 (1984). Because Morgart retired, it argues, he cannot now claim that his agency was wrongfully terminated. Furthermore, Union Mutual points out that Morgart admits not only that he has retired, but that he freely requested early retirement out of a number of options available to him. On these undisputed facts, Union Mutual would have the Court grant it summary judgment.

■ Union Mutual leans heavily on the case of *Ackerman v. Diamond Shamrock Corp.*, 670 F.2d 66, 69 (6th Cir.1982) to support its assertion that Morgart's consent to early retirement rids this case of any genuine issue of fact to be determined at trial. *Ackerman* was an action for discriminatory discharge under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* As a case interpreting a federal employment discrimination statute, *Ackerman* is only roughly analogous to the issue before this Court which turns on contractual or employment relations principles. More importantly, however, *Ackerman* is bad law.

The plaintiff in *Ackerman* swore that he had been told that his job was to be terminated. His retirement was voluntary, he claimed, only in the sense that he had the choice to retire or be fired. If he chose the latter, he would lose his rights to retirement benefits, which had been accumulating over twenty-three years of employment. Nevertheless, the Sixth Circuit panel approved the trial judge's finding that Ackerman retired · voluntarily and of his own free will, *Ackerman*, 670 F.2d at 69.

The court's findings on this record could only have been reached by turning a blind eye to the predicament facing the plaintiff. As another court has pointed out, "were defendant's argument accepted on this point, all persons under sixty-five who were entitled to pension benefits could be terminated because of their age and foreclosed from an age discrimination claim if they elected to receive their pension benefits,"

*Havelick v. Julius Wile Sons & Co.,* 445 F.Supp. 919, 925 (S.D.N.Y.1978).

Furthermore, the *Ackerman* court simply ignored the widely accepted doctrine of constructive discharge, which is often applied in the context of federal employment suits to find discharge when an employee appears at first glance to have acquiesced in his or her termination, *e.g., Williams v. Caterpillar Tractor Co.,* 770 F.2d 47, 49 (6th Cir.1985); *Goss v. Exxon Office Systems, Co.,* 747 F.2d 885, 888 (3d Cir.1984); *Calhoun v. Acme Cleveland Corp.,* 798 F.2d 559 (1st Cir.1986). In *Goss,* a constructive discharge was found when a salesperson was taken off her usual territory, and was told to accept an inferior substitute territory or resign, 747 F.2d at 888. In *Calhoun,* a court upheld a jury decision that an employee had been constructively discharged, in spite of the fact that he had agreed to take early retirement, at 561. These cases lead inexorably to the conclusion that *Ackerman* was wrongly decided.

## II. *Merger into Substituted Contracts.*

Of course, all of the cases cited above—including *Ackerman*—arose in the context of adjudications of federally-protected employment rights. Such rights have not been involved in this dispute. The exact nature of Morgart's relationship to Union Mutual, however, is not clear. The general agency agreement recites that "the General Agent shall be an independent contractor, and nothing in this agreement shall be deemed to create the relationship of employer and employee between the company and the General Agent." General Agent's Contract § 1, Ex. A to plaintiff's complaint. However, as Union Mutual itself has observed, the concept of "retirement" is usually linked to employment, *Young v. Western Electric Co.,* 189 N.J.Super. at 17, 458 A.2d 511. Furthermore, it appears from the record that Morgart's "Floored Oates" Agreement has been approved by the State of New York as a "retirement benefit," letter of 11/30/83 from Mark W. DeTora to James C. Morgart, Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, Exh. 10. The record does not reveal what such approval entails, nor what sort of relationship the New York regulations contemplate between the grantor and the beneficiary of a "retirement benefit." In the absence of information on this and other potentially relevant points, I cannot say to what extent the relationship between Morgart and Union Mutual is to be governed by traditionally accepted principles of contract law, and to what extent its construction should be influenced by recent developments in the law governing employment relations. Nor can I say, at this point, whose law of employment relations I should apply.

However, even if the agreement were to be governed by black-letter contract law principles, I could not hold that Morgart's willingness to accept his termination, and his subsequent execution of new agreements with Union Mutual, terminated any rights he may have had under his general agency contract.

After Morgart was told that Union Mutual intended to terminate his agency contract, he entered into a brief period of negotiations with the company. These negotiations resulted in the execution of three new agreements: the Floored Oates Agreement, dated December 15, 1983; a one-year "Consulting Agreement," also dated December 15, 1983; and a "Personal Producing General Agent Emeritus Agreement," effective as of January 1, 1984 and signed by Morgart on December 21, 1983. Putting the concept of retirement to one side, Union Mutual must show that the parties intended to substitute these new contracts for any rights and duties remaining under the original agency agreement. It may do so with evidence intrinsic to the contracts, *Rosenberg v. D. Kaltman & Co.,* 28 N.J.Super. 459, 464, 101 A.2d 94 (Ch. Div.1953), or by a course of dealing between the parties, *Maine Mortgage Co. v. Tonge,* 448 A.2d 899, 901 (Me.1982). The key question, however, is the intent of the parties, 6 *Corbin on Contracts* § 1293.

In our case, the parties have submitted to the Court documents which show that

the original draft of the Consulting Agreement contained a clause releasing Union Mutual from any claims Morgart might have. On December 12, 1983 Morgart wrote a letter to Union Mutual Vice President Mark De Tora, with whom he had negotiated the terms of the Consulting Agreement. Morgart wrote:

> You will note that I have deleted in it's [sic] entirety, your paragraph seven—Release, and paragraph eight—Termination. The Release was not discussed at our meeting. When we reached an agreement and shook hands it was on the basis that you had need for my services, you were hiring me as a Consultant, based upon fulfillment of that need. To include your paragraph seven as part of the transaction is grossly inappropriate. You want hire [sic] me, fine. I'll do the job I'm hired for. The money involved in this Consulting Agreement, if it is designed solely to secure the Release is a lousy offer.
>
> On the other hand, I have made no secret of the fact that I had been exploring other alternatives. Legal action being only one of them. However, that has nothing to do with the fact that you came to me and wished to retain me as a Consultant.
>
> I will give you this much. If I do, in fact, end up as a Consultant to the Unionmutual, that fact alone precludes me from continuing in the other avenues I have explored—and I'm prepared to go. Specifically, direct sales competition commencing January 2, 1984. My other Consulting job etc., etc. Also, any legal case would be somewhat compromised if I am your Consultant.

On December 15, De Tora sent Morgart an executed copy of the revised agreement, along with a letter which read in part: "We have reviewed your signed version of this agreement, and find it acceptable." No mention of the release was made.

Although the last-quoted sentence of Morgart's December 12 letter creates some ambiguity, I find that there is at the very least a genuine issue of fact as to whether the parties intended the Consulting Agreement to extinguish Morgart's claimed rights under the terminated agency agreement. The Consulting Agreement, as executed, makes no mention of the status of earlier agreements, and there is no inconsistency in Morgart's accepting the consultancy and reserving any rights he had under the agency agreement.

■ The Floored Oates Agreement is a slightly more complicated matter. The agreement changes the method in which commissions owed to Morgart will be paid to him, and guarantees certain minimum payments. Nothing in the agreement explicitly extinguishes previous claims. There is no inconsistency inherent in accepting such an agreement while reserving all rights arising from the breach of an earlier agreement. Moreover, Morgart asserts that the Floored Oates Agreement was available to him under a "Company Plan" promulgated in 1979, and not in compensation for his termination, Morgart Affidavit of August 11, 1986, at ¶ ¶ 10, 12. If this is the case, then the Floored Oates Agreement may fail as a matter of law to extinguish claims under the general agency agreement, because Morgart may not have received consideration for surrendering those claims.

Union Mutual has argued that it was not Union Mutual but Morgart who terminated the agency relationship of requesting early retirement and involving his right to the Floored Oates Agreement. Thus, says Union Mutual, there can be no claim for wrongful termination. We have already seen that this argument has been rejected in the context of employment relations. Even in cases not relying on employment law, however, courts have rejected the argument that a party surrenders rights under an agreement when, facing an intentional breach, he chooses to salvage what he can by entering into a new contract.

In a case closely resembling the case before this Court, the Kentucky Court of Appeals was faced with an insurance agent whose company, Wabash, refused to renew its agency agreement with him. He be-

came an agent for another company, and then, in order to transfer certain accounts to the new company, he signed an agreement in which Wabash surrendered its rights to those accounts in exchange for a general release. He then sued on his original agency agreement for failure to renew. The court refused to enforce the release clause of the new contract, finding that the agent "had been placed in a position where he could not bargain or negotiate for this contract to replace" his original agreement, but accepted it "as the best way out of a difficult situation but certainly with no intention that it would be substituted for the other contract." *Wabash Life Insurance Co. v. Comer*, 426 S.W.2d 444, 446 (Ky. 1967).

I read this case to say that the doctrine of substitution of contracts should not be applied to the detriment of a plaintiff whose ability to bargain freely was crippled by defendant's intentional breach. According to Morgart, this is exactly the position in which he found himself. In his affidavit, he states that he "was forced to elect the Floored Oates Agreement in order to protect myself against further financial harm.... By accepting the Floored Oates Agreement, my only interest was to reduce my losses. I did not accept the Floored Oates as settlement of my claims arising from termination."

Given this assertion, I could not find for Union Mutual even were I persuaded that employment law principles did not apply to this case. Morgart asserts that he requested early retirement only in order to mitigate damages. I cannot find in the face of this assertion that he voluntarily terminated his agency so as to deprive him of his rights under his general agency agreement.

■ Union Mutual also argues that the General Agent Emeritus Agreement, signed by Morgart on December 21, 1983, is a contract extinguishing all existing claims. It points to two provisions of that agreement. The first states,

**12)** *Release From Prior Agreements*
With respect to insurance solicited on and after the effective date hereof, this Agreement supersedes any prior agreement, contract or understanding between the parties hereto relating to solicitation of insurance in the Company by PPGAE [*i.e.*, Morgart].

The provision relates only to "insurance solicited on or after" January 1, 1984. Union Mutual argues that, because damages in this suit would be measured in terms of the insurance Morgart could have sold after December 31, 1983, this provision precludes the suit. This interpretation, while not beyond the realm of possibility, is not the most likely meaning that the words had to the parties. Morgart was unwilling to sign a release in exchange for his Consulting Agreement, and the record discloses no reason to believe that his attitude would have been any different in regard to this "emeritus" agreement. Moreover, Morgart does not seek to regain the right to solicit insurance under his general agency agreement; he seeks damages for what he concedes was an effective, if wrongful, termination of that right. The emeritus agreement appears to set the terms for the actual future relationship between the parties after January 1, 1984. It does not appear to abolish a right in existence before that date, even though it may be necessary to imagine a fictitional future relationship in order to calculate the worth of that right.

Union Mutual also points to the following provision in the emeritus agreement:

**13)** *Construction; Modifications*
The foregoing constitutes the entire agreement between the parties hereto. The Company shall not be bound by any other promise, agreement, understanding or representation heretofore or hereafter made, unless made in writing, signed by an officer of the Company and expressing by its terms an intention to modify this Agreement. The Company may modify this agreement in writing at any time upon 30 days written notice to PPGAE.

This language proves too much. It is not disputed that, in spite of this provision, Morgart and the company have or had Consulting and Floored Oates Agreements which were entered into before this agreement and which were in force after it. In light of these other agreements, this provision cannot be read literally to extinguish Morgart's claims arising from his general agency agreement. The fact that the section is headed "Construction" implies that the parties intended merely to merge the negotiations leading to the agreement into this written document.

For the foregoing reasons, Union Mutual's motion for summary judgment is denied.

### ORDER

This matter having been opened to the Court by the motions of defendants Union Mutual Life Insurance Company, et al. for dismissal and for summary judgment; and the Court having considered the submissions of the parties and having heard oral argument; and for the reasons set forth in the opinion filed herewith;

It is on this 20 day of September, 1986,

ORDERED that the order entered August 13, 1986 by Magistrate Ronald J. Hedges be, and it hereby is, vacated; and it is further

ORDERED that defendants' motion to dismiss is denied as to plaintiffs' claims for breach of contract, breach of a promise enforceable by application of promissory estoppel, and fraud and misrepresentation, and granted as to all other claims; and it is further

ORDERED that defendants' motion for summary judgment is denied.